**UNITED STATES of America, Appellee,**

v.

**Stewart J. LEONARD, Sr. and Frank H. Guthman, Defendants–Appellants.**

**Nos. 1345, 1346, Dockets 93–1739, 93–1740.**

United States Court of Appeals, Second Circuit.

Argued July 19, 1994.
Decided Sept. 15, 1994.

33

Kurt F. Zimmerman, New Haven, CT (Nathan M. Silverstein, Silverstein & Osach, P.C., of counsel), for defendant-appellant Leonard.

Jacob D. Zeldes, Bridgeport, CT (Adele V. Patterson, Zeldes, Needle & Cooper, of counsel), for defendant-appellant Guthman.

Barbara Bailey Jongbloed, Asst. U.S. Atty., Bridgeport, CT (Christopher F. Droney, U.S. Atty. D.Conn., Kari A. Pederson, Asst. U.S. Atty., of counsel), for appellee.

Before: WALKER, McLAUGHLIN and JACOBS, Circuit Judges.

WALKER, Circuit Judge:

Defendants Stewart J. Leonard, Sr. and Frank H. Guthman appeal from the sentences imposed by the United States District Court for the District of Connecticut (Peter C. Dorsey, *Judge*), following their guilty pleas to a one count information charging them with conspiring to defraud the United States by impairing, impeding, obstructing, and defeating the lawful functions of the Internal Revenue Service, in violation of 18 U.S.C. § 371.

On appeal, Leonard challenges the district court's upward departure when imposing his fine; Guthman challenges the district court's decision to enhance his sentence based on his role in the offense; both defendants challenge the validity of U.S.S.G. § 5E1.2(i), which permits district courts to impose the costs of incarceration, supervision, and probation; and Guthman argues that even if § 5E1.2(i) is valid, the imposition of such costs constituted an unreasonable upward departure.

We vacate Leonard's fine and remand for resentencing, but affirm the district court's sentence enhancement for Guthman's role in the offense. We hold that the promulgation of § 5E1.2(i) was a valid exercise of the United States Sentencing Commission's authority and that imposition of a fine under this provision is not reviewable as an upward departure from the fine table set forth in U.S.S.G. § 5E1.2(c).

## BACKGROUND

Located in Norwalk, Connecticut, Stew Leonard's Dairy is a family owned and operated retail grocery store that has been extremely successful since opening in 1969; in recent years, it has realized annual gross receipts as high as $87 million. Defendant Leonard is an 80% partner in the business and was its chief executive officer and chairman of the board for the majority of the period charged in the information, 1981 to 1991; defendant Guthman, Leonard's brother-in-law, was executive vice president in charge of operations during the relevant time period. Two other codefendants, not involved in this appeal, are Stephen Guthman, brother to Frank Guthman and executive vice president of finance and chief financial officer of the store since 1984, and Barry Belardinelli, who worked for the store from the time it opened in various positions including general manager and assistant to the chairman of the board. The presentence reports of Leonard and Guthman indicate that defendants began diverting cash receipts from Stew Leonard's Dairy in the late 1970s so that Leonard and his wife could evade income taxes.

The physical skimming of funds from Stew Leonard's Dairy was usually performed by Belardinelli. He worked in the store's vault room where he received bank deposit bags containing cash receipts collected from the store's cash registers, along with multicopy deposit tickets. He would receive instructions from either Frank or Steve Guthman specifying certain days of the week in which revenues should be skimmed and the total to be skimmed for the week. Belardinelli would then decide how much money to skim on a given day and set aside certain money bags that would otherwise have been deposited. He would then convert the cash into denominations of $50 or $100 by swapping small bills in the diverted bag with large bills from either the remaining deposit bags or the proceeds of the store's gift certificate program. After the swapping conversion, Belardinelli would place the diverted cash in a hidden safe in Leonard's private office. He would complete the skimming operation by generating a daily store report that reduced the store's gross receipts by the skimmed amount; shredding a computer tape generated by the store computer that reflected the store's actual gross receipts; providing Stephen Guthman with the original deposit ticket for the diverted bag of money and shredding all copies of this ticket; and informing Frank Guthman at the close of each week of the days and dates on which cash was divert-

ed and the amount diverted for each day. On those days when Belardinelli did not work, Frank Guthman carried out the skimming operations.

To conceal the skim, defendants instituted a computer program that altered the store's sales data to account for the skimmed cash. Creation of the program was necessary to synchronize the data generated by the computerized cash registers with the information generated by Belardinelli's altered daily store reports. In 1981 or 1982, Frank Guthman instructed Jeffrey Pirhalla, a store computer programmer, to write a complex computer program that reduced the store's sales and financial data by the amount of skimmed cash and permanently altered the data from which the store's books and records were created. The program left no audit trail and no trace that it had run. Frank Guthman operated it on the first day of each accounting week using the figures provided to him by Belardinelli and kept the tape cassette containing the program hidden in his office. He instructed Pirhalla to keep the program secret and, from time to time, told Pirhalla to alter the program to keep up with the store's changing computers. Guthman kept the obsolete versions of the program in his basement at home. To prevent the production of inconsistent store reports, Guthman instructed store employees not to print the weekly sales reports until receiving his approval, which he gave only after the data-altering program was executed.

Leonard and others physically transported the diverted cash to the Caribbean island of St. Martin, where its trail disappeared. The couriers packaged the money in amounts ranging from $10,000 to as much as $250,000 and either personally carried it or hid it in suitcases or boxes. They did not file currency or monetary instrument reports with United States Customs although required to do so for the international transportation of over $10,000 in currency. The scheme came under suspicion in the spring of 1991, when United States Customs officials searched Leonard as he was about to board a flight for St. Martin and found $20,000 on his person and another $50,000 in his luggage; Leonard had filled out a currency report stating that he had only $20,000.

After a full investigation, government officials determined that from 1981 through August 9, 1991, defendants were responsible for skimming over $17.1 million in unreported receipts from Stew Leonard's Dairy. Over the course of the conspiracy, the defendants created false books and records, misled auditors and accountants, filed or assisted in the filing of false tax returns, and smuggled cash out of the country, all for the purpose of obstructing the IRS in its functions and evading millions of dollars of taxes.

Following defendants' pleas of guilty, the United States Probation Office prepared a presentence investigation report for each defendant. The report for Leonard recommended a guideline incarceration range of 46 to 57 months and a fine range of $10,000 to $100,000. The report indicated that there were no known factors warranting an upward departure, but that Leonard's poor physical health might serve as the basis for a downward departure. The report for Frank Guthman recommended a guideline incarceration range of 41 to 51 months and a fine range of $7,500 to $75,000. Guthman's adjusted offense level included a three level enhancement for his role as a supervisor or manager pursuant to U.S.S.G. § 3B1.1(b).

The district court sentenced Leonard to a period of 52 months of incarceration to be followed by 36 months of supervised release, ordered him to pay a fine of $850,000, and imposed the costs of his incarceration and supervision in the amount of $96,850.80. The district court sentenced Frank Guthman to 41 months of incarceration to be followed by 36 months of supervised release, ordered him to pay a fine of $75,000, and imposed the costs of incarceration and supervision in the amount of $77,606.40. On appeal, Leonard and Guthman challenge the validity of their sentences and fines.

## DISCUSSION

### I. Leonard's Fine

Leonard argues that the district court's upward departure regarding his fine should be vacated because the district court did not

state valid reasons for making the departure. When imposing Leonard's fine, the district court relied on six factors in deciding to depart upwardly: (1) Leonard's initiation of the cash-skimming scheme; (2) his involvement of others; (3) the fact that he was the sole beneficiary of the scheme; (4) the fact that the scheme existed before the first year charged in the indictment; (5) the presence of unprosecuted offenses; and (6) Leonard's receipt of the time value of the skimmed cash. The question before us is whether the court's stated reasons in support of the departure were sufficient.

Congress has provided that a court may impose a sentence outside the guidelines range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The guidelines refer to two different types of departure: the guided and the unguided. U.S.S.G. Ch. 1 Pt. A § 4(b). With the first, "the guidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions." *Id.; see, e.g.,* U.S.S.G. § 2G1.1, Application Note 1 (recommending downward departure of eight levels where offense of transportation for the purpose of prostitution or prohibited sexual conduct was not committed for profit). The Commission intends district courts to follow these suggestions and expects that courts of appeal will be more likely to question departures that fall outside the suggested levels. U.S.S.G. Ch. 1 Pt. A § 4(b).

The second type of departure is left largely to the district court's discretion and generally pertains to situations where the district court finds the presence of factors "of a kind, or to a degree" not adequately considered by the Commission. *See id.* ("When a court finds an atypical case ... where the conduct significantly differs from the norm, the court may consider whether a departure is warranted."); *see also United States v. Merritt,* 988 F.2d 1298, 1308–09 (2d Cir.) (discussing guidelines' approach to departures), *cert. denied,* —— U.S. ——, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993). Sections 5K2.1–5K2.16 of the guidelines list some of the factors that the Commission recognized it had not fully accounted for, and which would therefore serve as appropriate bases for departures. U.S.S.G. § 5K2.0; *see, e.g.,* U.S.S.G. § 5K2.1 (where offense results in death). However, this list is not restrictive. District courts may determine in any particular case that there exist certain circumstances that were not given adequate consideration by the Commission. In addition, district courts may determine that although a factor was taken into consideration by the guidelines, "the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0. Departure will be warranted "only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense." *Id.*

In this case, the Government maintains that, wholly apart from the reasons cited by the district judge, Leonard's fine can be justified under Application Note 4 to U.S.S.G. § 5E1.2, which sets forth the basis for a guided departure for fines in certain cases. The Note states:

> The Commission envisions that for most defendants, the maximum of the guideline fine range from subsection (c) will be at least twice the amount of gain or loss resulting from the offense. Where, however, two times either the amount of gain to the defendant or the amount of loss caused by the offense exceeds the maximum of the fine guideline, an upward departure from the guideline may be warranted.

> Moreover, where a sentence within the applicable fine guideline range would not be sufficient to ensure both the disgorgement of any gain from the offense that otherwise would not be disgorged (*e.g.,* by restitution of forfeiture) and an adequate punitive fine, an upward departure from the fine guideline may be warranted.

The Government contends that this Application Note, which relies on the alternative fine provision in 18 U.S.C. § 3571(d) that a criminal fine can account for up to the greater of twice the gain to the defendant or twice the loss to the victim, reflects the Commission's recognition that the fine table will be inadequate to address tax evasion cases and that

upward departures should be considered in every tax fraud case involving a tax loss of more than $200,000.

■ The problem with the Government's argument is that the district court never referred to Application Note 4 or to the alternative fine provision of 18 U.S.C. § 3571(d) as the basis for Leonard's fine. It cited only the six factors mentioned previously. The Government's contention that the district judge must have relied on Application Note 4 because the Government brought it to the court's attention in a presentence letter submitted to the probation officer is unavailing. This Circuit has made clear that "in reviewing whether departure was justified we must examine the sentencing court's stated reasons for departure, rather than any additional justifications offered by the government either before or after sentencing." *United States v. Barone,* 913 F.2d 46, 50 (2d Cir.1990).

■ When we turn to the reasons actually given by the district judge, it is plain to us that they were already considered by the Sentencing Commission in formulating the guidelines. The first three were considered as factors relevant to a defendant's role in the offense; the fourth and fifth were considered by the Commission in its treatment of relevant conduct; the sixth was considered when the Commission established base offense levels that correspond both to the tax loss caused by a defendant and the fine he should pay, indicating that the fine ranges account for the defendant's offense and the fact that he likely benefitted from the use of the unpaid taxes prior to his conviction. Because the six factors relied upon by the district court were already "of a kind" considered by the Commission, the district court could only rely on them as a basis for departure if it determined that they were present "to a degree" not adequately considered by the Commission. No such determination was made. Consequently, the district court's statement of reasons is insufficient to support its upward departure. The mere presence of factors that have already been considered by the Commission does not permit a district court to depart from prescribed guideline ranges.

We note that the problems associated with Leonard's fine may have been caused in part by the fact that defense counsel was not notified until the day before the sentencing hearing that the district court was contemplating an upward departure. Rule 32 of the Federal Rules of Criminal Procedure requires that the parties receive reasonable notice that a district court is contemplating an upward departure and that specifies the basis for the potential departure. *See Burns v. United States,* 501 U.S. 129, 138, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991); *United States v. Marquez,* 941 F.2d 60, 64–65 (2d Cir.1991). If counsel had received a more timely notice that communicated the district court's six contemplated reasons for imposing a higher fine, the sentencing hearing might have more thoroughly explored the departure issue and thereby avoided the confusion in the present record.

Without passing on whether, had appropriate reasons been given, the fine departure in Leonard's case was unreasonable, we think the most appropriate course under the circumstances is to vacate Leonard's sentence and remand for further proceedings. We vacate Leonard's entire sentence in order to give the district court complete flexibility upon resentencing.

## II. Guthman's Role Adjustment

Guthman argues that the district court improperly enhanced his offense level by three points based on an erroneous interpretation of what it means to be a "manager or supervisor" pursuant to U.S.S.G. § 3B1.1(b). Guthman contends principally that the district court (1) improperly relied upon Guthman's communication of messages to Belardinelli and Pirhalla, and (2) confused Guthman's role in the offense with his management position in the legitimate business of Stew Leonard's Dairy.

■ Guthman styles his challenge as a purely legal question regarding the correct application of a guideline, which we normally review *de novo.* *See United States v. McGregor,* 11 F.3d 1133, 1138 (2d Cir.1993). He attempts to distinguish his claim from the large majority of "role in the offense" chal-

lenges, which dispute either the accuracy or sufficiency of the district court's factual findings, and are reviewed under a clearly erroneous standard. *See United States v. Castillo,* 14 F.3d 802, 807 (2d Cir.1994) (reviewing sufficiency of evidence); *United States v. Pitre,* 960 F.2d 1112, 1126 (2d Cir.1992) (reviewing accuracy of findings); *see also United States v. Backas,* 901 F.2d 1528, 1529–30 (10th Cir.) (making similar distinction between factual and legal challenges to role in the offense determination), *cert. denied,* 498 U.S. 870, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990).

We reject Guthman's argument that his sentencing challenge presents a purely legal question for the main reason that he does not account for the totality of the sentencing record. Guthman's attack presents a view of the district court's findings that does not support a role enhancement, while ignoring those district court findings that do justify the enhancement. Thus, while we agree with Guthman that a § 3B1.1 enhancement cannot be premised on the simple relaying of messages or the supervision of persons uninvolved in the criminal activity, these conclusions are not dispositive of Guthman's challenge because his enhancement was not based solely on these factors. The issue thus devolves into whether Judge Dorsey's findings of fact were sufficient to warrant the role in the offense adjustment, which we review under the clearly erroneous standard.

■ While Judge Dorsey observed that Guthman often appeared to take his directions from others, he also found that Guthman was more than a messenger or a conduit from Leonard to Belardinelli and Pirhalla. For example, the district court found that Guthman instructed Belardinelli on the procedure for shredding documents, the days of the week to skim funds, which documents to alter, what to do with the cash, and, prior to 1984, how much to skim. The district court also found that Guthman instructed Pirhalla to create the data-altering computer program, to make periodic modifications to it, and to keep his work a secret. Guthman's argument that these activities fail to qualify him as a "supervisor" or "manager" because he was only communicating instructions from higher up in the criminal conspiracy is unavailing. To qualify for an adjustment under § 3B1.1, " 'the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime.' " *United States v. Mares–Molina,* 913 F.2d 770, 773 (9th Cir.1990) (quoting *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990)). Here, the district court found that Guthman organized Belardinelli's and Pirhalla's activities in order to further the cash-skimming scheme. It is irrelevant that Guthman may have undertaken these supervisory activities at someone else's behest; what is dispositive is that he took a management role in the criminal scheme.

We also reject Guthman's argument that the district court erroneously based the role enhancement on his legitimate management activities within Stew Leonard's Dairy. We might well have found it to have been error if the adjustment were grounded solely on the findings that Guthman directed unwitting computer operators to delay store reports until the data-altering computer program had been executed and exercised supervisory control over various store workers who performed activities that advanced the cash-skimming scheme. These employees were not part of the criminal activity, and in order to qualify for an adjustment under § 3B1.1, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants," with a participant being defined in the Application Notes as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, Application Notes 1, 2. *See also United States v. Barnes,* 993 F.2d 680, 685 (9th Cir.1993) (in order to be a supervisor, "the defendant must have managed or supervised *at least one other participant*") (internal quotations and citation omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 96, 130 L.Ed.2d 46 (1994); *United States v. Lanese,* 890 F.2d 1284, 1293 (2d Cir.1989) (reversing role enhancement where there was no evidence that defendant "had authority over anyone else involved in the conspiracy"), *cert. denied,* 495 U.S. 947,

110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). However, the role enhancement adjustment was not so confined. Since the enhancement was based independently on the fully adequate ground of supervising Belardinelli and Pirhalla in the criminal scheme, it is sustainable on that basis.

■ Finally, we reject Guthman's contention that his role enhancement is unfair because he was less involved in the tax evasion scheme than his brother, who did not receive a role enhancement. "A co-defendant's sentencing range is irrelevant in determining the defendant's sentence where there are differing circumstances." *United States v. Schular*, 907 F.2d 294, 299 (2d Cir.1990). Here, ample evidence distinguished Frank Guthman from his brother Steven. Steven started working at Stew Leonard's many years after the cash-skimming scheme was established, never ran the data-altering computer program, and did not exercise supervisory control over employees like Pirhalla. In addition, the district court determined that while there may have been enough evidence to impose a role enhancement for Steven, it was counter-balanced by other evidence pointing to Steven's relative lack of responsibility and psychological problems. The court found no such mitigating factors when considering Frank Guthman. Given the differences between the brothers, we easily reject Frank Guthman's argument that the imposition of his role enhancement was inequitable.

### III. The Validity of U.S.S.G. § 5E1.2(i)

Both Leonard and Guthman contend that the Sentencing Commission exceeded the scope of its statutory authority by promulgating U.S.S.G. § 5E1.2(i), which provides that:

Notwithstanding of the provisions of subsection (c) of this section [pertaining to the guidelines table of fines], but subject to the provisions of subsection (f) herein [pertaining to the defendant's ability to pay], the court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered.

There is a split in the circuits on the validity of § 5E1.2(i). Defendants rely on *United States v. Spiropoulos*, 976 F.2d 155 (3d Cir. 1992) (Becker, J.), which held the guideline invalid, while the Government champions *United States v. Turner*, 998 F.2d 534 (7th Cir.) (Easterbrook, J.), *cert. denied*, —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 598 (1993), a later decision which disagreed with *Spiropoulos* and held that the promulgation of § 5E1.2(i) was a permissible exercise of the Commission's authority. We agree with the reasoning and result reached by the Seventh Circuit.

Based on the text of § 5E1.2(i), the Third Circuit ruled that the guideline's only purpose was to recoup the costs of imprisonment, which was invalid because it was not authorized either in 18 U.S.C. § 3553(a), which sets forth the factors a district court must consider in sentencing a defendant, or in 18 U.S.C. § 3572(a), which details the factors a district court must consider when determining whether to impose a fine. The Third Circuit ruled that § 5E1.2(i) could not be justified by the general sentencing objectives listed in § 3553(a), stating "there is no reason to believe that assessing the costs of imprisonment (in addition to other fines) deters criminal conduct, that it protects the public from further crimes of the particular defendant, or that it helps to rehabilitate the defendant." 976 F.2d at 165. The Third Circuit also rejected the Government's argument that the guideline served to compensate victims of crime, a factor mentioned in § 3572(a), because, in the court's view, calculating the compensation based on the costs of the defendant's incarceration bore no rational relationship to the harm suffered by the victim. *Id.* at 160.

The Seventh Circuit upheld § 5E1.2(i) on the basis that it serves to deter criminal conduct and is thus authorized by 28 U.S.C. §§ 994(c)(3) and (6), which state that the Commission should consider the "nature and degree of the harm caused by the offense," and "the deterrent effect a particular sentence may have on the commission of an offense by others," and by 18 U.S.C. §§ 3553(a)(2)(A) and (B), which advise district courts to impose sentences that "reflect the seriousness of the offense" and "afford adequate deterrence to criminal conduct."

*Turner,* 998 F.2d at 536. The *Turner* court specifically rejected the reasoning in *Spiropoulos* that found no basis to believe that higher penalties increase deterrence. *Id.* To the contrary, Judge Easterbrook observed that the guidelines were constructed on the belief that higher fines and longer sentences are more effective deterrents and that "[a] large body of evidence supports this intuition," citing various books and articles on economic theories of criminal punishment. *Id.* at 536–37.

■ We believe that the Seventh Circuit's analysis presents the more reasonable view of § 5E1.2(i). The Third Circuit's ruling unnecessarily restricts the guideline to serving as a recoupment measure without exploring its functional role within the sentencing scheme. Indeed, the *Spiropoulos* court appeared to acknowledge its disinclination to read § 5E1.2(i) broadly, stating that "the government has presented no evidence suggesting that a section 5E1.2(i) fine serves any of [the] purposes [in § 3553(a) ], and we see no reason why it would." 976 F.2d at 166. Like the Seventh Circuit, we think it appropriate to evaluate the guideline in the context of the guidelines as a whole and the criminal justice theories on which they were constructed. In doing so, we conclude the Sentencing Commission's promulgation of § 5E1.2(i) to have been a proper exercise of its authority to formulate sentencing guidelines that account for the seriousness of a defendant's offense and the deterrence his sentence may have on others. *See also United States v. Hagmann,* 950 F.2d 175 (5th Cir.1991) (rejecting due process argument that § 5E1.2(i) is not rationally related to its purpose), *cert. denied,* — U.S. —, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992); *United States v. Doyan,* 909 F.2d 412 (10th Cir.1990) (rejecting equal protection argument that § 5E1.2(i) unfairly makes only convicted criminals pay for confinement).

■ Finally, we reject defendants' argument that imposition of a § 5E1.2(i) fine contravenes the language in 18 U.S.C. § 3553(a) that criminal sentences imposed under the guidelines must be "sufficient, but not greater than necessary, to comply" with the purposes of the Sentencing Reform Act.

Defendants contend that imposition of a fine in accordance with the fine table found in § 5E1.2(c) fully satisfies the purposes of the Sentencing Reform Act, and that a § 5E1.2(i) fine therefore results in punishment "greater than necessary" to effectuate the purposes of the Sentencing Reform Act. However, nothing in the Sentencing Reform Act leads us to conclude that the boundary of a "sufficient" fine in a particular case is set by the guidelines' fine table in § 5E1.2(c). Even the *Spiropoulos* court acknowledged that as long as a § 5E1.2(i) fine is authorized by the Sentencing Reform Act, imposition of it is not excessive. 976 F.2d at 164 n. 9. To the contrary, consideration of a § 5E1.2(i) fine is an integral part of the Guideline's calculus, and imposition of it will often be necessary to achieve the sentencing purposes set forth by Congress in 18 U.S.C. § 3553(a). *See Hagmann,* 950 F.2d at 186 (rejecting same claim).

## IV. Does Imposition of a § 5E1.2(i) Fine Constitute an Upward Departure?

■ Guthman argues that although his § 5E1.2(c) fine was within the range authorized by the fine table, the additional imposition of a § 5E1.2(i) fine brought his financial penalty above the guideline range and thus constituted an upward departure that must be reviewed for its reasonableness. We disagree.

The fine table in § 5E1.2(c) provides the minimum and maximum fine that can be imposed on a defendant with a particular base offense level, subject to certain exceptions. Guthman's $75,000 fine was within his applicable guideline range of $7,500 to $75,000, and is thus non-reviewable. *See United States v. Adeniyi,* 912 F.2d 615, 618 (2d Cir.1990) (sentence within guidelines range not appealable, absent a showing that a violation of law occurred or that the guidelines were misapplied); *see also United States v. McDowell,* 957 F.2d 36, 37 (1st Cir.1992) (fine within guidelines range not appealable).

The district court's additional imposition of the costs of his incarceration and supervised release does not constitute a departure from the guideline range because these additional costs were imposed under a separate guide-

line and involve different considerations. As such, their imposition cannot be counted toward whether the district court stayed within the range prescribed by § 5E1.2(c). There is no warrant anywhere in the Sentencing Reform Act or the guidelines for the courts to limit the accumulated fines under § 5E1.2(c) and § 5E1.2(i) to the maximum fine under § 5E1.2(c). If the Sentencing Commission had wanted this to be the case, it could easily have said so. Instead, it said the opposite. In § 5E1.2(b), the Commission stated that "[e]xcept as otherwise provided in subsection (f) [regarding a defendant's ability to pay] and (i) below, or otherwise required by statute, the fine imposed shall be within the range specified in subsection (c) below." This statement clearly removes the fine imposed under "(i) below" from the parameters of the fine table. The text of § 5E1.2(i) reiterates this principle; it specifically states that the court shall impose the costs of imprisonment, probation, and supervised release "[n]otwithstanding of the provisions of subsection (c) of this section." We therefore conclude that the imposition of costs under § 5E1.2(i) cannot be analyzed as an upward departure. Guthman's argument to the contrary is not supported by the language or the structure of § 5E1.2.

## CONCLUSION

For the reasons set forth above, we affirm both defendants' convictions, vacate Leonard's sentence, affirm Guthman's sentence, and remand for further proceedings consistent with this opinion.