UNITED STATES of America, Appellee,

v.

**Kevin BRINKWORTH, Defendant–Appellant,**

**Elizabeth Brinkworth, Richard Brinkworth, Dennis Brinkworth, Kathryn Kinsman, Jeffrey Davis and John Edwards, Defendants.**

No. 569, Docket 95–1272.

United States Court of Appeals, Second Circuit.

Argued Sept. 20, 1995.

Decided Oct. 19, 1995.

Stephen L. Braga, Washington, DC (Michael J. Barta, Miller, Cassidy, Larroca & Lewin, of counsel), for Defendant–Appellant.

Kathleen M. Mehltretter, Assistant United States Attorney, Buffalo, NY (Patrick H. NeMoyer, United States Attorney, of counsel), for Appellee.

Before: OAKES, MINER and MAHONEY, Circuit Judges.

OAKES, Senior Circuit Judge:

Appellant Kevin Brinkworth pleaded guilty to one count of falsifying tax returns in violation of 26 U.S.C. § 7206 (1988), and was sentenced to 14 months' incarceration. The guilty plea was entered before Judge Richard Arcara, Western District of New York, and sentence was imposed by Chief Judge Michael Telesca of that district.

Brinkworth raises two issues in this appeal. First, he contends that Judge Arcara erroneously failed to recuse himself. Brinkworth filed a 28 U.S.C. § 455(a) motion to disqualify Judge Arcara eight days before scheduled commencement of trial, claiming that Judge Arcara appeared biased because he supervised two offices that had prosecuted Brinkworth several years previously, and because of a rumor "prevalent in the community" about Brinkworth's past involvement with the Judge's wife. Judge Arcara denied the § 455(a) motion, finding that the motion was untimely and "based upon conclusions, rumor, gossip, and erroneous information."

Second, Brinkworth claims that Chief Judge Telesca erred in refusing to hold an evidentiary hearing regarding the application of United States Sentencing Guidelines § 3B1.1(c), and in applying § 3B1.1(c) against Brinkworth. Section 3B1.1(c) provides for a two-level increase in the offense level "if the defendant was an organizer, leader, manager, or supervisor...." of the criminal scheme. The district court found that the factual disputes regarding the § 3B1.1(c) enhancement did not justify an evidentiary hearing, and that the evidence supported a § 3B1.1(c) increase.

We affirm the district court on both the recusal and the sentencing claims for the reasons set forth below.

## I. BACKGROUND

On May 9, 1991, a grand jury returned a 29–count indictment charging Brinkworth and six others, including Brinkworth's wife and brothers, with conspiracy, tax fraud, and

mail fraud. The court (Arcara, *J.*) dismissed one count, and scheduled two trials on the remaining counts. After close of the Government's case during a trial on five counts, the court granted Brinkworth's Federal Rules of Criminal Procedure Rule 29 motion and dismissed the charges. Trial on the remaining 23 counts was set for October 18, 1994.

Counsel for Brinkworth and the Government negotiated a plea agreement and presented it to the court prior to the final pretrial conference. The court indicated that, as a policy, it never participates in plea bargaining or commits to a sentence. Following this, Brinkworth declined to accept the plea agreement.

On October 14, 1994, Brinkworth's brother, Dennis, filed a 28 U.S.C. § 455(a) motion to disqualify Judge Arcara. The motion contained two grounds for recusal: first, that as the U.S. Attorney for the Western District of New York and then later as a District Attorney, Judge Arcara supervised offices that twice prosecuted Dennis and Kevin Brinkworth; and, second, that Judge Arcara did not appear impartial due to a rumor "prevalent in the community" about Kevin Brinkworth's past relationship with Judge Arcara's wife.

The motion was accompanied by five supporting affidavits. All of the affiants lived in Brinkworth's city of residence, Buffalo, and all stated that they knew of the rumor. One affiant, Pascal Pratt, stated that in the "late 1970s," when Judge Arcara was a United States Attorney in Buffalo, he overheard Judge Arcara say, "Kevin Brinkworth received too lenient a sentence. Some day I'll get him." Pratt stated that he overheard this comment "in close proximity in time" to Brinkworth's sentencing in a case prosecuted by the U.S. Attorney's Office in Buffalo.

On the day after the § 455(a) motion and supporting affidavits were filed, the Government produced "as arguable *Brady* material" [*Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] a statement from John Hanny, a Government witness, that he had "personally overheard a remark made by Judge Richard J. Arcara to the effect that '[i]f Kevin [Brinkworth] thinks he is getting his case out of my Court he has

another thing [sic] coming.'" After the Government disclosed this statement, Kevin Brinkworth joined in his brother Dennis's recusal motion. In Kevin Brinkworth's affidavit supporting joinder, he denied any relationship with the Judge's wife, though he stated that he also knew of the rumors. He stated that he felt compelled to join in the recusal motion after learning of Hanny's statement.

Judge Arcara denied defendants' motion for recusal in an Order dated October 20, 1994, finding the motion untimely, based upon "conclusions, rumor, gossip, and erroneous information," and "an apparent attempt to have the case transferred to another Judge who might be willing to make a commitment regarding sentence prior to the time of sentencing or to entertain a plea disposition under [Federal Rules of Criminal Procedure] Rule 11(e)(1)(C)." The trial commenced. During jury selection, the parties informed the court of a plea agreement. The court again declined to commit to a sentence. Brinkworth then asked the court to allow a Federal Rules of Criminal Procedure Rule 11(a)(2) plea conditioned upon appeal of the § 455(a) motion denial. After argument by the parties, the court declined to allow a conditional plea, noting that *United States v. Chantal,* 902 F.2d 1018 (1st Cir.1990), may control the issue, and therefore Brinkworth would be permitted to appeal even after entry of an unconditional guilty plea. Kevin Brinkworth eventually agreed to plead guilty, unconditionally, to one count of the remaining 23. The court heard and accepted the guilty plea on November 1, 1994.

In April 1995, the court filed a Supplemental Decision that fully analyzed the recusal motion. In this Supplemental Decision, the court reiterated its denial of the § 455(a) motion, but nevertheless transferred the case to Chief Judge Michael Telesca for reassignment for sentencing.

Chief Judge Telesca decided to keep the case and sentence Brinkworth himself. During plea negotiations, the Government agreed to support a Sentencing Guideline offense level of 9 and a sentence of six months' home detention. The Presentence Investigation

Report, however, recalculated Brinkworth's sentence and recommended a two-level increase based upon the defendant's role as an "organizer, leader, manager, or supervisor" of the tax fraud scheme, U.S.S.G. § 3B1.1(c), and a two-level enhancement for use of "sophisticated means," U.S.S.G. § 2T1.1(b)(2). The Presentence Investigation Report recommended a total offense level of 14.

Brinkworth disputed the application of § 3B1.1(c) and § 2T1.1(b)(2), and requested an evidentiary hearing. Although the court did not allow an evidentiary hearing on the recommended enhancements, the court did review the parties' legal memoranda, entertain extensive argument from counsel, hear a statement from Brinkworth, and invite other affidavits and evidence.

As a part of Brinkworth's rebuttal to the § 3B1.1(c) enhancement, he offered an unsworn written statement of his accountant, Larry Amodeo, asserting that Brinkworth did not organize, lead, manage, or supervise Amodeo. At the sentencing hearing, the court conducted an informal, unsworn interview of Amodeo regarding this sentencing factor.

The court rejected the § 2T1.1(b)(2) "sophisticated means" increase, but found that Brinkworth was an "organizer, leader, manager, or supervisor" under § 3B1.1(c). The court therefore arrived at an offense level of 11, and sentenced Brinkworth to fourteen months of incarceration.

## II. DISCUSSION

■ *A. Recusal.* Brinkworth moved for Judge Arcara's recusal under 28 U.S.C. § 455(a) (1988), which states, "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Abuse of discretion is the proper standard of review for § 455(a) disqualification motions. *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992).

■ *1. Waiver:* The Government contends that the recusal issue is not properly before this Court on appeal. It is true that a guilty plea generally waives all but specifically reserved and jurisdictional defenses. *See United States v. Doyle,* 348 F.2d 715, 718 (2d Cir.), *cert. denied,* 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965); 1 Charles A. Wright, *Federal Practice and Procedure* § 175 (1982). Brinkworth claims that this general rule does not apply when a defendant who has entered an unconditional guilty plea wishes to appeal a denied § 455(a) motion. This Court has not yet had occasion to rule on this issue.

■ Subsection (a) of § 455 "is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case." H.R.Rep. No. 1453, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355. The legislative history indicates that the integrity of the judiciary is the paramount concern of the statute. Section 455(a), therefore, is as much a protection for the citizenry as for the complaining defendant.

Brinkworth relies on *United States v. Chantal,* 902 F.2d 1018 (1st Cir.1990), for the proposition that an appeal of a denied recusal motion should not be "unalterably lost— 'waived'—by [a] guilty plea." *Id.* at 1020. In *Chantal,* the court found that "fundamental fairness" and the statutory goal of § 455(a) require that appeals from § 455(a) denials be entertained even after entry of an unconditional guilty plea. *Id.* at 1021. It also found that a defendant need not enter a conditional plea under Federal Rules of Criminal Procedure Rule 11(a)(2) in order to preserve the issue, since Rule 11(a)(2) requires consent of the trial judge.[1] The court noted that "[i]t would be incongruous to hold that for one seeking the benefit of such protection the consent would have to be obtained

---

1. Fed.R.Crim.P. 11(a)(2) states:
   Conditional Pleas. With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing

the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

from the very judge whose qualifications are under attack." *Id.*

In response, the Government calls our attention to *United States v. Gipson*, 835 F.2d 1323 (10th Cir.), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 623 (1988), a case specifically rejected by the *Chantal* court. In *Gipson*, the court found that an unconditional guilty plea waives appeal of a § 455(a) disqualification motion. The court noted that § 455(b), which enumerates specific circumstances and relationships requiring a judge to remove himself or herself from a case, cannot be waived by a party, whereas disqualification arising from § 455(a)—the appearance of impartiality—may be waived by a party if a judge fully discloses the basis for possible disqualification. *Id.* at 1325 (citing 28 U.S.C. § 455(e)[2]). The court reasoned that since § 455(e) allows a party to waive disqualification of a judge when there is an appearance of partiality predicated upon § 455(a), a party who enters a guilty plea without seeking to preserve the § 455(a) recusal issue waives the right to appeal a § 455(a) denial. *Id.*

The *Gipson* approach is formalistic, and relies upon the notion that an improper § 455(a) denial is a "pretrial defect which is sublimated within a guilty plea," 835 F.2d at 1325, rather than an error that affects the integrity of the whole judicial process. Similarly, the Seventh Circuit has argued that a defendant who pleads guilty in front of a judge who merely "appears" biased suffers no substantial prejudice. *See United States v. Balistrieri*, 779 F.2d 1191, 1204 (7th Cir. 1985), *cert. denied, DiSalvo v. U.S.*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986); *United States v. Murphy*, 768 F.2d 1518, 1540 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986). One may draw out this argument and conclude that since a defendant's due process right has not been violated, a defendant should have no right to appeal after entry of a guilty plea.[3]

However, many courts, no doubt mindful of the statutory goal, have held that an improper § 455(a) denial should be remedied by vacating the judgment, even though the defendant has suffered no actual prejudice. *See Preston v. U.S.*, 923 F.2d 731, 735 (9th Cir.1991); *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111–12 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *see also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (vacating a civil judgment due to a § 455(a) violation). The *Chantal* decision similarly promotes the idea that, in order to protect the integrity of the judiciary and ensure justice, a defendant should retain his right to appeal when there is a question of judicial bias, even though he may have suffered no direct, actual harm from such a denial.

■ We find that *Chantal's* approach, which permits a defendant who has pleaded guilty unconditionally to appeal a § 455(a) denial, correctly resolves the waiver issue. The legislative history of § 455(a) indicates that Congress did not intend for the section's provisions to be circumvented easily. Since a district court has dominion over both a § 455(a) and a Rule 11(a)(2) conditional guilty plea decision, we believe that a complaining defendant should be able to seek review in this court even after entry of an unconditional plea. To hold otherwise might cause a defendant, faced with a judge's refusal to entertain a Rule 11(a)(2) plea, to go to trial rather than settle the matter by entering an unconditional plea. In the circumstance of potential judicial bias, we believe the better course is to ensure a defendant's right to appeal. We hold, therefore, that a defendant who pleads guilty unconditionally may nevertheless appeal denial of a § 455(a) motion.

**2.** Section 455(e) states:
No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

**3.** We note, however, that *Balistrieri* permits immediate appeal by way of a mandamus petition. 779 F.2d at 1205.

*2. Timeliness:* The district court found that Brinkworth failed to file the recusal motion in a timely fashion, and that, in any event, the motion lacked a proper factual basis.

█ Although § 455 does not specify a time limit for application, a timeliness provision has been judicially implied. *Apple v. Jewish Hosp.,* 829 F.2d 326, 333 (2d Cir. 1987); *In re I.B.M.,* 618 F.2d 923, 932 (2d Cir.1980); *see In re I.B.M.,* 45 F.3d 641, 643 (2d Cir.1995); *United States v. Daley,* 564 F.2d 645, 651 (2d Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978). A party must bring a disqualification motion "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Apple,* 829 F.2d at 333. We have noted that "prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters." *In re I.B.M.,* 45 F.3d at 643. When deciding if a § 455(a) motion is timely, we apply a four-factor test which asks whether:

(1) the movant has participated in a substantial manner in trial or pre-trial proceedings;

(2) granting the motion would represent a waste of judicial resources;

(3) the motion was made after the entry of judgment; and

(4) the movant can demonstrate good cause for delay.

*Apple,* 829 F.2d at 334 (citations omitted).

Given the long history of this litigation and Brinkworth's admitted knowledge of the rumor underlying the disqualification motion, it is clear that Brinkworth did not file the motion "at the earliest possible moment." *Id.* at 333. We must, therefore, turn to the four factors outlined in *Apple* in order to determine whether Brinkworth's motion was timely.

The first three factors are easily addressed. First, as the record amply demonstrates, Brinkworth was a full participant in this litigation. Brinkworth was involved in several proceedings in this case, including a trial on severed counts, prior to filing the § 455(a) motion.[4] Second, when the recusal motion was filed, eight days prior to the scheduled beginning of the trial, granting the motion would have caused substantial delays and consequent waste of judicial resources. Another judge would have needed to become familiar with a case already three years underway. The third factor does not weigh against the defendant, since the motion was indeed made before entry of judgment.

At the crux of the balancing is whether the defendant had "good cause for delay." Here, Brinkworth joined the motion for recusal over three years after the case had been assigned to Judge Arcara. Without doubt, Brinkworth was aware from the time of Judge Arcara's assignment that Judge Arcara, as both District Attorney and United States Attorney, had supervised two offices that had prosecuted Brinkworth years earlier. Brinkworth also knew of the rumors in the community for some time prior to filing the recusal motion.

█ Brinkworth claims good cause for delay exists because of the statements of Pascal Pratt, filed as an affidavit with Dennis Brinkworth's § 455(a) motion, and the statement of John Hanny, submitted by the government thereafter. With regard to the Pratt statement, we find Brinkworth's argument to be without merit: nowhere in his affidavit does Brinkworth state that he was previously unaware of the subject matter of Pratt's statement. Furthermore, the alleged statement by Judge Arcara was made years earlier when he was acting as a prosecutor. Such an historical statement, made at a time when Judge Arcara stood in an adversarial position to the defendant, adds nothing new to the claim of bias, and thus does not constitute good cause for delay.

█ On its face, the comment Hanny supposedly heard seems to create a bias issue. However, since the government released the Hanny statement on the day following Den-

**4.** We note that during these proceedings, Brinkworth received several favorable rulings from Judge Arcara, including the Rule 29 dismissal.

nis Brinkworth's recusal motion, it is unlikely that the comment referred to the recusal motion itself. Additionally, the supposed background for the alleged statement is a rumor "prevalent in the community" and known to Brinkworth for years. We find that in light of Brinkworth's long involvement in this case and knowledge of the rumor, his § 455(a) motion, conveniently filed soon after the district court refused to make a pre-plea commitment to sentencing, was untimely.[5]

*B. Sentencing.* The Presentence Investigation Report recommended, among other things, that the court impose a two-level § 3B1.1(c) enhancement based upon Brinkworth's supervision of "participants" in the criminal scheme. United States Sentencing Guideline § 3B1.1(c). The commentary to § 3B1.1 defines a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.*, an undercover law enforcement officer) is not a participant." U.S.S.G. § 3B1.1, Application Note 1. The district court accepted the recommendation of the Presentence Investigation Report and imposed a two-level increase pursuant to § 3B1.1(c).

Brinkworth claims that the district court erred in denying his request for an evidentiary hearing regarding the application of Sentencing Guideline § 3B1.1(c), and that the court further erred in applying § 3B1.1(c) to his sentence. We discuss each of these contentions in turn.

■ *1. Evidentiary Hearing:* The United States Sentencing Guideline § 6A1.3(a) states:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor ... provided that the information has sufficient indicia of reliability to support its probable accuracy.

Brinkworth requested an evidentiary hearing pursuant to this section, contending that the § 3B1.1(c) "criminally responsible" participation of others in the conspiracy was at issue. The district court denied Brinkworth's request for a full evidentiary hearing. We review the district court's decision for abuse of discretion. *United States v. Olvera,* 954 F.2d 788, 792 (2d Cir.), *cert. denied,* 505 U.S. 1211, 112 S.Ct. 3011, 120 L.Ed.2d 885 (1992).

■ Section 6A1.3 requires an "adequate opportunity to present relevant information," but, as the commentary notes, "[w]ritten statements of counsel or affidavits of witnesses may be adequate under many circumstances." U.S.S.G. § 6A1.3, Application Note. When deciding between an evidentiary hearing and another means of obtaining "adequate" information, a "sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law." *Id.* As this Court has emphasized, "[t]he procedure followed in resolving disputed factors at sentencing rests in the sound discretion of the trial court." *United States v. Ibanez,* 924 F.2d 427, 430 (2d Cir.1991). Here, we must review the district court's sentencing procedure to determine whether the court provided an "adequate opportunity" for Brinkworth to present information to the court regarding the application of § 3B1.1(c).

The district court reviewed the legal memoranda of the parties, the grand jury testimony, and an unsworn statement of Brinkworth's accountant, Larry Amodeo, submitted by Brinkworth. At the sentencing hearing, the court heard arguments from both parties, and listened to a statement from Brinkworth. The court also spoke with Amodeo, though the court did not require that he be placed under oath.

The focus of Brinkworth's contention that this procedure was inadequate is that Amodeo, when questioned by the court, was not

**5.** Brinkworth places undue reliance upon the Hanny statement as a means of escaping the timeliness requirement. Even if we were to consider the motion timely, the Hanny statement is

unsworn hearsay not specific as to time, place, or source, and thus cannot serve as the basis for a reasonable belief of bias. *See United States v. Balistrieri,* 779 F.2d 1191, 1204 (7th Cir.1985).

placed under oath. The court resolved conflicts between Amodeo's sentencing statements and his grand jury statements in favor of the sworn grand jury statements that Amodeo orally reaffirmed as true during the sentencing proceeding. Brinkworth contends that the court erred when it declined to place Amodeo under oath at the sentencing hearing, and then placed greater reliance upon Amodeo's sworn grand jury testimony than upon Amodeo's unsworn statements.

■■■■ Of course, a court need not rely solely on admissible evidence in making a sentencing determination. U.S.S.G. § 6A1.3, Application Note. The court, therefore, was not required to administer an oath to Amodeo. Furthermore, the district court may make credibility determinations which this Court will not disturb unless clearly erroneous. *United States v. Beverly*, 5 F.3d 633, 642 (2d Cir.1993). Here, in light of Amodeo's oral reaffirmance of his grand jury testimony, the Court acted properly within its discretion in denying an evidentiary hearing regarding the application of § 3B1.1(c).[6]

■■■■ Taken as a whole, the procedures employed by the district court were adequate to satisfy the Sentencing Guidelines. The procedures utilized oral and written statements from both parties, and allowed both parties to submit evidence in support of their positions. Such procedures greatly minimized any "risk of error" associated with denying a full evidentiary hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). Similar procedures have been approved by this Court on several occasions. *See Olvera*, 954 F.2d at 792; *United States v. Prescott*, 920 F.2d 139, 143–144 (2d Cir.1990); *United States v. Romano*, 825 F.2d 725, 730 (2d Cir.1987). We affirm the district court's denial of an evidentiary hearing since Brinkworth had ample opportunity to rebut the Presentence Investigation Report's application of § 3B1.1(c).

*2. Application of § 3B1.1(c) to Brinkworth:* Brinkworth contends that the district court erred in finding other participants in the scheme, including Mr. Amodeo, "criminally responsible," and in finding that Brinkworth supervised the activity of such participants.

■■■■ Section 3B1.1(c) may be applied if it is shown by a preponderance of the evidence that a defendant was an "organizer, leader, manager, or supervisor" of another "criminally responsible" participant in the criminal scheme. *See* U.S.S.G. § 3B1.1; *United States v. Beverly*, 5 F.3d 633, 642 (2d Cir. 1993); *United States v. Guerra*, 888 F.2d 247, 249–51 (2d Cir.1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990). If § 3B1.1(c) applies, the offense level increases by two. The district court's inquiry is not limited to defendant's role in the count of conviction; rather, the court may take all "relevant conduct" into account. *United States v. Perdomo*, 927 F.2d 111, 116–17 (2d Cir.1991); *see* U.S.S.G. § 1B1.3; *see generally Witte v. United States*, —— U.S. ——, ——, 115 S.Ct. 2199, 2205, 132 L.Ed.2d 351 (1995). The district court's findings will not be disturbed unless clearly erroneous. *United States v. Leonard*, 37 F.3d 32, 37–38 (2d Cir.1994); *United States v. Valdez*, 16 F.3d 1324, 1335 (2d Cir.), *cert. denied, Mock v. U.S.*, —— U.S. ——, 115 S.Ct. 60, 130 L.Ed.2d 18 (1994); *United States v. Farah*, 991 F.2d 1065, 1068 (2d Cir.1993); *United States v. Ibanez*, 924 F.2d 427, 430 (2d Cir. 1991); *United States v. Parker*, 903 F.2d 91, 103 (2d Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

■■■■ The district court found that Amodeo was a "criminally responsible" participant because he had knowledge of and participated in the criminal activity. *See United States v. Lanese*, 890 F.2d 1284, 1293 (2d Cir.1989) (finding that, absent a showing of knowledge, bookmakers were not criminally responsible for defendant's "use of extortionate means to collect illegal gambling debts"), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990). Amodeo, an accountant

---

6. We note that Brinkworth's argument for an evidentiary hearing seems disingenuous in light of the fact that the Amodeo statement submitted by Brinkworth for the court's consideration was unsworn. Certainly counsel could have received an affidavit from Mr. Amodeo, or from other participants in the scheme, such as Brinkworth's wife Elizabeth.

with several years of experience (including previous employment as an I.R.S. auditor), received Brinkworth's financial statements and prepared Brinkworth's tax returns. Amodeo knew that certain income reported on the financial statements was not reported on the tax returns, as he himself was the person who did not place the amounts on the returns. Amodeo was not an uninformed, "unwitting" participant on the outskirts of a criminal conspiracy. *Compare Leonard,* 37 F.3d at 38 (stating that it would be error to consider "unwitting computer operators" participants under § 3B1.1). Rather, Amodeo was a professional accountant, with specific knowledge that income reported on financial statements such as Schedule 1099s must be reported on tax returns. Despite this knowledge, Amodeo did not report some income. Such knowledge makes Amodeo a "criminally responsible" participant in the tax fraud scheme.

The district court also concluded that Brinkworth was an "organizer, leader, manager, or supervisor" of the criminal scheme. "Whether a defendant is considered a leader depends upon the degree of discretion exercised by him, the nature and degree of his participation in planning or organizing the offense, and the degree of control and authority exercised over the other members of the conspiracy." *United States v. Beaulieau,* 959 F.2d 375, 379–80 (2d Cir.1992). Brinkworth argues that he never supervised or managed the criminal scheme, pointing to unsworn statements of Amodeo during the sentencing hearing that Amodeo "never considered [Brinkworth] a ring leader."

Brinkworth's contention simply does not withstand scrutiny. The evidence is abundant that Brinkworth played a supervisory role sufficient to sustain a § 3B1.1(c) enhancement. Brinkworth hired Amodeo. As Amodeo stated throughout his grand jury testimony, and again at the sentencing hearing, Brinkworth supplied records to Amodeo and directed Amodeo's preparation of returns. It is irrelevant that at times others may also have directed Amodeo. Section 3B1.1 requires only that "the defendant ... exercise[ ] some control over others involved in the commission of the offense...." *Unit-*

ed States v. Mares–Molina, 913 F.2d 770, 773 (9th Cir.1990) (citing *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990)). As Brinkworth himself admitted when he pleaded guilty, he "conducted the management of rental properties[,].... actively participated in the day to day management of these rental properties.... [and] was responsible for providing information to the tax preparer to prepare the tax returns." This is precisely the sort of activity to which § 3B1.1(c) applies. Therefore, we affirm the district court's application of § 3B1.1(c) to the defendant.

**III. CONCLUSION**

We affirm the judgment of the district court denying Brinkworth's § 455(a) motion, and we affirm the court's sentencing determination.