UNITED STATES of America,
Appellee,

v.

Francisco REYES, aka "Alex," Henry Falcon, Milton Jimenez, aka "Milton Jimenez–Rosado," aka "Junior," Alfonso Rodriguez, aka "Kiko," Ronald Littman, aka "Rodney," Thomas Lloyd, aka "LA," LNUI–98CR01371–008, Manuel Familia, aka "Manolo," Martin Martinez–Arias, Defendants,

Javier Garcia, aka "Javier," aka "Jose Falcon," Defendant–Appellant.

Docket No. 01–1310.

United States Court of Appeals, Second Circuit.

Feb. 22, 2002.

Jesse M. Siegel, Esq., New York, NY, for Defendant–Appellant.

Jonathan S. Kolodner, Celeste L. Koeleveld, Assistant United States Attorneys, New York, NY, for Appellee.

Present VAN GRAAFEILAND, KATZMANN, Circuit Judges, and KORMAN,* District Judge.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

On June 1, 1999, defendant Javier Garcia pleaded guilty to both counts of a two-count indictment that charged him and nine other co-defendants with participating in a conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and with distributing and possessing with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. Two years later, on June 1, 2001, the district court sentenced Garcia to a term of 168 months' imprisonment. In reaching this sentence, the district court concluded that Garcia had acted as a "manager" or "supervisor" in the drug distribution scheme and, pursuant to USSG, § 3B1.1(c), was subject to a two-point increase in his offense level. This determination also had the effect of making Garcia ineligible for the "safety valve" under § 5C1.2 of the Sentencing Guidelines. *See* USSG, § 5C1.2(4).

On appeal, Garcia argues that the Government failed to show by a preponderance of the evidence that he acted as a manager or supervisor and thus the District Court erred in applying the managerial enhancement. For the reasons that follow, we disagree.

■ In reviewing a district court's application of the Sentencing Guidelines, we must " 'accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts.' " *United States v. Franklyn,* 157 F.3d 90, 97 (2d Cir.1998) (quoting *United States v. Davis,* 967 F.2d 84, 88–89 (2d Cir.1992)). Although we examine *de novo* the district court's ultimate determination that a defendant was a "manager" or "supervisor," *see, e.g., United States v. Escotto,* 121 F.3d 81, 85 (2d Cir.1997), whether the district court's "findings of fact were sufficient to warrant the role in the offense adjustment" is an issue that we "review under the clearly erroneous standard." *United States v. Leonard,* 37 F.3d 32, 38 (2d Cir.1994).

■ In determining that Garcia acted as a manager or supervisor, the district court relied primarily on the synopses found in defendant's Presentence Report ("PSR") of transcripts of taped conversations between Garcia, co-defendants Milton Jimenez, Francisco Reyes, Ronald Littman, and Thomas Lloyd, as well as others, that were obtained under warrant by the Drug Enforcement Agency. There is no suggestion by defendant that the PSR inaccurately recounted these transcripts or that the conversations themselves were monitored improperly.

Having reviewed the PSR and its detailed summary of defendant's phone conversations, we conclude that this evidence

---

* The Honorable Edward R. Korman, Chief Judge for the Eastern District of New York, sitting by designation.

supports the district court's application of the managerial enhancement. Several conversations indicate that defendant Garcia used co-defendant Jimenez as a courier. Defendant informs customers that Jimenez will deliver drugs that were ordered, *see* Conversation of August 15, 1998 (PSR ¶ 53(c), ¶ 37) and take delivery of drugs from others. *See* Conversation of November 10, 1998 (PSR, ¶ 47). Defendant is also heard instructing Jimenez to pick up drug purchases, *see* Conversations of September 8, 1998 (PSR, ¶ 56). Although Garcia concedes that these conversations are "susceptible to the interpretations urged by the government," Brief for Defendant–Appellant, 18, he argues that they are "at least equally consistent," with the alternate interpretation he urges in a letter submitted by his counsel to the district court prior to sentencing and later sworn to by defendant. *Id.* Therein, defendant claims that Jimenez was not part of the same criminal organization to which defendant belonged, but acted as a middleman for a separate set of buyers. Thus, defendant argues, he was not "supervising" Jimenez, but merely facilitating the purchase of drugs by Jimenez.

Defendant's argument is unavailing. *First,* as defendant himself admits, the government's interpretation of the tape conversations is at least as plausible as his own. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We cannot conclude, therefore, that the district court's acceptance of the government's position, and its subsequent determination that Jimenez was acting under orders from defendant, was "clearly erroneous." Given the district court's factual determination, its application of the managerial enhancement was justified. *See, e.g., United States v.*

*Liebman,* 40 F.3d 544, 548 (2d Cir.1994) (explaining that a defendant acts as a "manager or supervisor" if he "exercise[s] some degree of control over others involved in the commission of the offense.") (internal quotations omitted).

*Second,* defendant's interpretation of his conversations with Jimenez ignores the fact that, immediately before these conversations took place, defendant was recorded negotiating the price or quantity of drugs with the same individuals to whom defendant then directed Jimenez to meet. *See* Conversation of August 15, 1998 (PSR, ¶¶ 37 and 53(c)); Conversation of November 10, 1998 (PSR, ¶ 47). This evidence clearly supports an inference that Jimenez was working *for* Garcia (or, at the very least, the same organization to which Garcia belonged) as a courier.

■ Defendant further argues that although he arranged for drug deliveries, instructing others where to take possession of the drugs and how to distribute them, he was merely acting on the orders of co-defendant Henry Falcon, transmitting logistical instructions that were not his own. As we have noted, however, "[i]t is irrelevant that [the defendant] may have undertaken these supervisory activities at someone else's behest; what is dispositive is that he took a management role in the criminal scheme." *Leonard,* 37 F.3d at 38. Furthermore, defendant's portrayal of his role in the Falcon organization does not square with those conversations in which he clearly wields authority to haggle over the specific terms of drug deals. *See* Conversations of July 8, 1998 (PSR, ¶ 28), August 21, 1998 (PSR, ¶ 53(f)), and August 25, 1998 (PSR, ¶ 53(g)). Such exercises of discretion further support the application of the managerial enhancement in this case. *See United States v. Beaulieau,* 959 F.2d 375, 379–80 (2d Cir.1992) (noting the

relevance of the degree of discretion exercised by a defendant to the applicability of the aggravating role guideline).

We have considered all of defendant's arguments on appeal and find them to be without merit. The judgment of the District Court is therefore AFFIRMED.