**Michael C. ANTONELLI et al., Appellant,**

v.

**G. A. RALSTON, Jr., Warden, U. S. Medical Center for Federal Prisoners, Springfield, Missouri, Appellee.**

**No. 79–8181.**

United States Court of Appeals, Eighth Circuit.

Nov. 1, 1979.

Daniel Healing, pro se.

Michael C. Antonelli, pro se.

Joseph John Cuff, pro se.

Ronald Veatch, pro se.

Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., for appellee.

Before BRIGHT and ROSS, Circuit Judges.

## ORDER

Michael C. Antonelli, Ronald Veatch, Daniel Healing, and Joseph John Cuff, federal prisoners, brought this action in federal district court for injunctive relief against G.A. Ralston as warden of the United States Medical Center for Federal Prisoners at Springfield, Missouri. The matter was referred to a federal magistrate, who construed the petition as an application for a writ of habeas corpus directed to alleged unconstitutional conditions of confinement, see *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir. 1974). The magistrate denied petitioners relief because they failed to exhaust administrative remedies. The district court adopted the magistrate's recommendation, denied petitioners relief, and further ordered that petitioners be denied leave to appeal *in forma pauperis* because "the appeal is not taken in good faith," citing *Willis v. Ciccone, supra.* Petitioners now seek leave to appeal *in forma pauperis.*

Our review of the proceedings in district court discloses that the inmates seek to attack as unconstitutional a policy relating to prisoners' mail. The warden in a memorandum-letter dated June 29, 1979, and effective July 1, 1979, suspended free mailing privileges for inmates except for the furnishing to each of five free postage stamps. This local directive (see appendix) makes no mention of free postage for indigent inmates. We note that the directive refers to and purports to implement a "new Bureau [Bureau of Prisons] Program Statement and Institution Supplement."

We entertain some doubt that the rule of *Willis v. Ciccone* applies here. In *Willis,* the court observed:

> We hold that if grievance procedures provide an *adequate means for impartial review,* then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court. [*Id.* at 1015 (emphasis added).]

Here, the petitioners attack formalized programs already adopted. They assert that the formal prison policy deprives indigent prisoners of means of communication to persons outside the prison. The petition seems to raise an important issue of constitutional dimension. We question whether any adequate means exist for prisoners to obtain any relief when the request for relief may conflict with written prison policy.

We believe that the appropriate procedure in this case would have been to stay proceedings for a limited period of time pending petitioners' attempt to obtain relief administratively. If such relief proved unavailable, then the district court (or magistrate) could have proceeded to hear and determine the merits.

The district court is the appropriate forum to determine whether an avenue exists for petitioners to obtain relief administratively. Our granting of an appeal at this time could not resolve that issue. Accordingly, we deny the leave to appeal *in forma pauperis* without prejudice to petitioners to seek reconsideration of their petition from the district court in light of our comments herein.[1]

---

1. We take judicial notice of the Program Statement issued by the Federal Prison System on May 24, 1979, relating to prisoners' mail.

  The Bureau policy on mailing appears to be more liberal than the institutional policy at the Medical Center for Federal Prisoners at Springfield, as set forth in the appendix to this order. The Bureau policy "encourages correspondence that is directed to socially useful goals." § 540.10 of the Program Statement. Each inmate receives free postage for five pieces of first class domestic mail per month. An inmate without funds, or lacking sufficient funds for postage, may send legal and emergency mail at government expense. § 540.20(b).

## APPENDIX

**DATE** June 29, 1979
**REPLY TO** G. A. Ralston, Jr.
**ATTN OF** Warden
**SUBJECT** Institution Supplement SPG–5265.5—Correspondence
**TO** All Concerned

Effective July 1, 1979, we will be implementing our new Bureau Program Statement and Institution Supplement on Correspondence. There are some areas I feel you should be aware of and I will attempt to give you a brief synopsis of these areas prior to implementation.

Copies of the Bureau Program Statement and Institution Supplement will be placed in the inmate law library during the week of July 1. Due to the nature of this facility, all inmates' mail shall be handled in an unsealed manner. They will be automatically sealed by the mailroom prior to mailing from the institution. All incoming mail will be opened and inspected for contraband and outgoing mail will be spot checked for indications of violation of Bureau of Prisons Program Statements. The special mail boxes shall be located at the 4–building T and on ward 1–4. On closed wards the office-in-charge will separate special mail for mailing. Special mail is very similar to our old PMB mail and will be handled according to Bureau policy in this area.

Also effective July 1, 1979, free mailing privileges will be suspended for all inmates at this facility. They will be issued five (5) free postage stamps during the evening of July 1, 1979. In order to alleviate any problems in the area of the number of stamps inmates have, the commissary will be open Monday evening for the purchase of stamps only. After 12 midnight Saturday night, inmates will not be allowed to use franked envelopes. Possession of these franked envelopes could result in disciplinary action if they are retained. Inmates are urged to turn in all franked envelopes by Tuesday, July 3rd at 4:00 p. m. to their ward officers. After this time they will be considered contraband. Franked envelopes are those pre-stamped envelopes with government insignia on them which allows for free mailing privileges for government agencies.

Effective Monday, staff will no longer be allowed to utilize our mailroom for the mailing of government documents. The only exception to this will be for certified mail. Staff members shall take their outgoing mail at 4:00 p. m. to the open mailbox in front of the Control Center.