**Ted W. GLEAVE, Plaintiff,**

v.

**Virginia GRAHAM, Diane Livingston, and Glen Myszka,[1] Defendants.**

No. 95–CV–677S(F) (consent).

United States District Court, W.D. New York.

Jan. 22, 1997.

---

1.  Plaintiff, Ted W. Gleave, named Virginia Graham and Glen Myszka as Defendants in his Complaint and Summons, although according to Defendants' answer, the correct first names for defendants Graham and Myszka are Veronica and Gerald, respectively. Answer, p. 1. The court notes, however, that Defendants Graham and Myszka have not denied that they are the defendants referred to in Gleave's papers. Accordingly, the caption should be amended to conform to Defendants' actual first names.

600

602

Ted W. Gleave, Grand Island, NY, Pro Se.

Leonard G. London, Williamsville, NY, for Defendants.

## DECISION AND ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

The parties to this action executed a consent to proceed before the undersigned, pursuant to 28 U.S.C. § 636(c), which was filed on October 17, 1995. The matter is presently before the court on Defendants' motion for judgment on the pleadings and for attorney's fees, filed November 1, 1995.

### BACKGROUND and FACTS [2]

Plaintiff filed this action on August 11, 1995 alleging a violation of his right to due

---

2. Taken from uncontravened allegations in the pleadings. *See Syracuse, Inc. v. Mattel, Inc.,* 595 F.Supp. 56, 58 (N.D.N.Y.1984) (*citing National Metropolitan Bank v. United States,* 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945) (when considering defendant's Rule 12(c) motion, all well-pleaded allegations in the complaint are assumed to be true, and all contravening assertions in

process under the Fifth Amendment. Specifically, Gleave claims that he was sentenced by Hon. William M. Skretny of this court to serve a term of ninety days at the Buffalo Halfway House, a contract facility which provides services to the United States Bureau of Prisons. Gleave commenced service of that sentence on May 20, 1995. It is alleged that Defendant Graham as director of the Buffalo Halfway House and Defendants Myszka and Livingston as employees told Gleave that if he failed to pay the Buffalo Halfway House 25% of his gross weekly wages and 25% of his monthly government (veterans') disability check that he would be "violated and sent to prison," despite his objection that the payments were illegal. Gleave, nevertheless, because of Defendants' "threat of incarceration" made the required payments "under protest." In his Complaint, Gleave acknowledged that Congress had authorized the Attorney General to establish fees to be paid by residents of halfway houses to defray costs of maintaining those facilities but that Gleave was unable to "find any policy statement issued by the Attorney General" relating to payment of such fees.

Gleave completed his sentence on August 11, 1995 having paid a total of $1380. He claims damages for this loss of his property and mental anguish as well as punitive damages.

For their answer, Defendants denied only the Complaint's allegations insofar as it asserts the required payments are illegal and Gleave's damage claims. Defendants stated as affirmative defenses a lack of subject matter jurisdiction over the Complaint, that the Complaint failed to state any federal claim, and that the payments in question were required pursuant to a contract between the Buffalo Halfway House, Inc., ("the Halfway House"), a non-profit entity, and the federal Bureau of Prisons ("BOP"), a copy of which was attached to the Answer.

defendant's answer are assumed to be false). *See also Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988) (granting motion to dismiss under Rule 12(c) is inappropriate where sole reason for granting such motion was not undisputedly pleaded by Defendants in their answer, but was brought to the court's attention by way of matters outside the pleadings).

In their motion, filed November 1, 1995, Defendants seek dismissal pursuant to Fed. R.Civ.P. 12(c), and attorneys fees.[3] Responding to the motion, Gleave filed on November 8, 1995, an Affirmation in Opposition to which Defendants replied on December 27, 1995. However, as the court does not treat the motion as one for summary judgment, only the uncontravened allegations of the pleadings will be considered. No oral argument was conducted.

For the reasons which follow, Defendants' motion for judgment on the pleadings is GRANTED. Defendants' motion for attorneys' fees is DENIED.

### DISCUSSION

**1. Subject Matter Jurisdiction and Bivens Action**

As the Complaint alleges a claim for damages based on an asserted violation of the Fifth Amendment due process clause this court has subject matter jurisdiction under 28 U.S.C. § 1331. Although not specifically stated in the Complaint, Gleave's cause of action, if any, must be construed as predicated upon *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) which held that a federal cause of action for violation of a federally protected constitutional right, in *Bivens* a Fourth Amendment violation, was implied by the specific constitutional protection at issue allowing recovery of money damages against federal officers acting under color of federal law. The Supreme Court has also approved *Bivens* actions for violations of the Fifth Amendment. *Davis v. Passman,* 442 U.S. 228, 248–49, 99 S.Ct. 2264, 2278–79, 60 L.Ed.2d 846 (1979). As the Supreme Court has directed that *pro se* pleadings should be considered under less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner,* 404 U.S. 519, 519–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), the

3. Although the motion does not specifically request dismissal on the ground that the Bureau of Prisons is an indispensable party pursuant to Fed.R.Civ.P. 12(b)(7) and 19, as this issue is raised in Defendants' Memorandum of Law filed November 1, 1995, the court will address it.

court therefore construes Gleave's Complaint as a *Bivens* action for a violation of his Fifth Amendment constitutional right to due process of law.

■ Here, Gleave alleges he was deprived of his property without due process when Defendants, employees of the Halfway House, collected subsistence payments to offset the costs of his confinement at the Halfway House. Gleave also claims a violation of his due process rights based upon the Defendants' alleged threats that he would be incarcerated in a federal prison if he failed to make the payments. Although Gleave describes this claim as arising under the Fifth Amendment, the court will also construe this element of the Complaint generously, as it must, and finds that it asserts a violation of Gleave's First Amendment right to object to the required payments. *Bivens* actions have also been allowed in the case of First Amendment claims. *Jensen v. Farrell Lines, Inc.*, 625 F.2d 379, 384 (2d Cir.1980).

The lower federal courts are not in accord as to whether a *Bivens* action lies against persons who are not federal officers but, rather, as alleged in the Complaint, employees of a federal contractor. *DeVargas v. Mason & Hanger–Silas Mason Co., Inc.*, 844 F.2d 714, 720, n. 5 (10th Cir.1988). The issue has not been addressed squarely by the Supreme Court, *see Reuber v. United States*, 750 F.2d 1039, 1055 (D.C.Cir.1984), nor has the issue been addressed by the Second Circuit. Although one district court in this circuit has dealt with the question, *Mahoney v. National Organization for Women*, 681 F.Supp. 129, 132 (D.Conn.1987) (stating that "plaintiff must show the defendant's actions were commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with the color of state action"), the court need not resolve this issue as it finds the uncontroverted allegations of the pleadings demonstrate that Gleave has failed to establish a violation of either his Fifth or First Amendment rights.

■ However, the fact that a complaint may upon a motion to dismiss be found to fail to state a federal claim does not deprive the court of subject matter jurisdiction where, as in this case, the Complaint clearly alleges that a defendant's actions violated the plaintiff's constitutional rights. "[I]n cases where the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution. If so, then we assume or find a sufficient basis for [subject matter] jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1189 (2d Cir.1996). As 28 U.S.C. § 1331 grants original jurisdiction to district courts for "all civil actions arising under the Constitution ... of the United States" and as Gleave's Complaint explicitly asserts the Fifth Amendment due process clause as a basis for relief, Defendants' motion to dismiss for lack of jurisdiction must be denied. *Davis v. Passman*, 442 U.S. 228, 234, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979). *See also Bivens, supra.* Jurisdiction for Gleave's claim being properly found under Section 1331(a), it is not necessary to consider whether subject matter jurisdiction is also available under 28 U.S.C. § 1343.

### 2. *Motion for Judgment on the Pleadings*

■ Upon motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), the court must follow the same standards applicable to a motion under Rule 12(b)(6). *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

In determining whether dismissal is proper for a plaintiff's failure to state a claim upon which relief may be granted, the court must accept all allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. *Shechter v. Comptroller of the City of New York*, 79 F.3d 265, 270 (2d Cir.1996). A court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard, supra*, at 150 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). This standard is "ap-

plied with particular strictness when the plaintiff complains of a civil rights violation." *Sheppard, supra,* 18 F.3d at 150 (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)).

■ Matters of which judicial notice may be taken are appropriately considered in ruling on a motion to dismiss under Rule 12(b)(6). *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d.Cir.1993). As the standard for determining whether to grant a motion for judgment on the pleadings under Rule 12(c) is the same as that employed in deciding a motion under Rule 12(b)(6), the court may also consider matters for which judicial notice is appropriate on a Rule 12(c) motion. *Diaz v. Coughlin,* 909 F.Supp. 146, 147–48 (S.D.N.Y.1995).

To establish a *Bivens* claim for relief, Gleave must show "(1) that the challenged action was attributable at least in part to a person acting under color of federal law, and (2) that such conduct deprived the Plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). As noted, Defendants in this motion primarily contend that Gleave has not alleged any federal constitutional violation without specifically addressing whether Defendants may be considered federal actors. As the first, and equally dispositive, issue can be determined on the face of the pleadings, it will be the focus of the court's analysis.

### 3. *Gleave's Claim Based upon a Due Process Violation under the Fifth Amendment.*

#### a. *The requirement that a federal prisoner pay the costs of incarceration does not violate due process*

■ The gravamen of Gleave's complaint is that the fee payments collected from him based on his wages and veterans' disability benefits by Defendants are illegal and

that, in response to his objection to pay such fees, Defendants threatened him with incarceration in a prison. The court finds that neither allegation, even presuming its truth, would constitute a violation of the Fifth Amendment. As noted, whether any of Gleave's constitutional rights could be violated by Defendants' alleged threats will be addressed separately. See Discussion *infra* at pp. 610–611. Although neither the Complaint nor the Answer provides the details of the sentence underlying Gleave's complaint, the court finds that the exact sentence imposed on Gleave by this court is relevant to a proper analysis of this case. Thus, the court takes judicial notice of the sentence which precipitated Gleave's challenge.[4] The court also takes judicial notice of the BOP's Program Statement Numbers 7300.08 and 7310.03 which set forth the BOP's official internal agency guidelines that are specifically applied to the challenged fees and thus relevant to a thorough discussion of this matter.[5] *United States v. Penn Foundry and Mfg. Co., Inc.,* 337 U.S. 198, 215, 69 S.Ct. 1009, 1017, 93 L.Ed. 1308 (1949) (Douglas, J., concurring) (official communications which disclose policy, like reports, rules and regulations of agencies or other communications to Congress are equally reliable and authoritative and need no further proof); *Antonelli v. Ralston,* 609 F.2d 340, 341, n. 1 (8th Cir.1979) (judicial notice was taken of a Bureau of Prison's Program Statement).

In this case, Gleave was convicted of two counts of bankruptcy fraud in criminal case number 90–CR–33S–002, for which Judge Skretny imposed the following sentence:

> Defendant is *sentenced to the custody of the Attorney General* of the United States for a period of 27 months on each count to run concurrently. Imposition *of all but three months* of the sentence is suspended and the balance of the sentence (2 years) is probation. *The 3 months shall be served in a halfway house* as soon as a spot becomes available. Probation is to begin

4. Fed.R.Evid. 201 permits judicial notice of adjudicative fact, *i.e.,* facts that are beyond reasonable controversy, at any time in the proceeding, allowing any objections to be interposed after notice has been taken.

5. To facilitate a more complete understanding of the court's reasoning and pursuant to the principle of judicial notice, the court has directed that copies of these Bureau of Prisons Program Statements be filed with the other papers in this action.

immediately but will be interrupted *for 3 months upon surrender to the halfway house....* [emphasis added].[6]

There can be no dispute that the three months of incarceration which Gleave served at the Halfway House, for which Gleave was required to make the challenged subsistence payments, was part of the sentence imposed on Gleave following his federal bankruptcy fraud convictions. The objective of incarceration in a halfway house is that "[a]ll eligible inmates will have opportunities to participate in [community corrections center] programs to assist with their reintegration into the community, in accordance with their release needs." BOP Program Statement Number 7310.03, ¶ 2(a).

The judgment of sentence makes clear that Gleave was to serve three months of incarceration in the custody of the Attorney General who, pursuant to 18 U.S.C. § 4001(b)(1), is vested with the authority to promulgate rules for the governance of federal penal and correctional facilities. The BOP is authorized pursuant to 28 C.F.R. § 0.96 "to exercise or perform any of the authority, functions, or duties conferred on the Attorney General by any law relating to the confinement, control, or treatment of persons ... convicted of offenses against the United States...." 28 C.F.R. § 0.96. Additionally, as a federal offender, Gleave was subject to 18 U.S.C. § 3621 which provides that:

[a] person who has been sentenced to a term of imprisonment [following a conviction for a federal offense] shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until released for satisfactory behavior....

18 U.S.C. § 3621(a).

Further, pursuant to 28 C.F.R. § 0.96c, the Attorney General is required to establish and collect a fee from a federal prisoner to cover the cost of one year of incarceration.

Moreover, "[t]he Director of the Bureau of Prisons is delegated the authority to collect the fee to cover the cost of incarceration from the inmates committed to the custody of the Attorney General and to promulgate all the regulations concerning the collection of the fee." 28 C.F.R. § 0.96c. Thus, the BOP is authorized to collect a subsistence fee from a federal prisoner for the costs of his incarceration and to adopt such regulations in the form of its internal Program Statements relative to confinement in community corrections centers, including halfway houses.

The Program Statements adopted by the BOP concerning the subsistence fee provide that,

In order to promote personal financial responsibility, the BOP requires residents to contribute to the cost of their [Community Corrections Center] residence through subsistence payments to the contractor. Contractors shall collect twenty-five percent (25%) of each employed resident's weekly gross income, (not to exceed the daily manday rate times seven, per week) rounded down to a whole dollar amount, EVERY PAY DAY. Residents who are not employed, but who have other means of financial support (i.e., Social Security, VA Benefits, Workman's Compensation, etc.) shall contribute an amount to be determined appropriate by the contractor and approved by the [Corrections Center Manager]. The amount should approximate 25% of the resident's weekly income.

BOP Program Statement Number 7300.08, ¶ D.

However, broader authority for the disputed fees can be found in statutory enactments which have been sustained against similar challenges. The United States Sentencing Guidelines, which applied to Gleave's conviction, also provide the sentencing court with authority to "impose an additional fine

---

**6.** The United States Sentencing Guidelines refers to non-secure custody as being "a community corrections center, community treatment center, 'halfway house,' or similar facility...." U.S.S.G. §§ 2J1.6(b)(1)(B) and 2P1.1(b)(3). As the sentence imposed on Gleave required him to be incarcerated in the custody of the Attorney General at a halfway house, the court finds that Buffalo Halfway House is a community correc-

tions center within the meaning of the Sentencing Guidelines, and the court reads Gleave's allegations to implicitly agree that this is the fact. Thus, the court, under the law applicable to the Complaint, finds that the BOP considers a halfway house, community corrections center, and community corrections facility to be similar facilities.

amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered." U.S.S.G. § 5E1.2(i). Although Judge Skretny's sentence did not direct such payments, the sentence did require Gleave to serve time in a halfway house which is subject to the BOP's reimbursement fees. Imposition of a fine on a federal prisoner under U.S.S.G. § 5E1.2(i) to defray the costs of incarceration has been upheld against due process challenge in *United States v. Zakhor*, 58 F.3d 464 (9th Cir.1995). In *Zakhor* the court found that the requirement was rationally related to a legitimate governmental objective and stated that "[a]s a matter of just punishment, [defendant] owed the government for having imposed the cost of supervising his detention on society...." *Zakhor, supra*, at 468. Further, just punishment "[does] not depend on what the government does with the money; it is enough that the offender be deprived of the wealth." *Id.*

The Third Circuit has held that district courts are without authority to impose such fines. *United States v. Spiropoulos*, 976 F.2d 155 (3d Cir.1992). However, the reasoning of *Spiropoulos*, that such fees were beyond the authority granted by the Sentencing Reform Act of 1987, was explicitly rejected by the Second Circuit which affirmed the imposition of costs of incarceration under Section 5E1.2(i) of the Sentencing Guidelines in *United States v. Leonard*, 37 F.3d 32 (2d Cir.1994), *United States v. Orena*, 32 F.3d 704, 716–17 (2d Cir.1994), and *United States v. Carter*, 978 F.2d 817, 819–20 (2d Cir.1992). In *Leonard*, the Second Circuit adopted the rationale of *United States v. Turner*, 998 F.2d 534 (7th Cir.), *cert. denied*, 510 U.S. 1026, 114 S.Ct. 639, 126 L.Ed.2d 598 (1993), in rejecting *Spiropoulos*. As the Second Circuit in *Leonard* stated, "we conclude the Sentencing Commission's promulgation of § 5E1.2(i) to have been a proper exercise of its authority to formulate sentencing guidelines that account for the seriousness of a defendant's offense and the deterrence his sentence may have on others." *Leonard, supra*, at 40. In support of this conclusion, the Second Circuit relied upon *United States*

*v. Hagmann*, 950 F.2d 175 (5th Cir.1991) (rejecting due process argument that § 5E1.2(i) is not rationally related to its purpose), *cert. denied*, 506 U.S. 835, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992), and *United States v. Doyan*, 909 F.2d 412 (10th Cir.1990) (rejecting equal protection argument that § 5E1.2(i) unfairly makes only convicted criminals pay for confinement).

Moreover, the court notes that the authority for a sentence like Gleave's, analogous to the sentence which was challenged in *Spiropoulos*, is even stronger as its justification does not rely solely on U.S.S.G. § 5E1.2(i). Rather, as under his sentence Gleave was permitted by the BOP to leave the Halfway House to work at paid employment in the community, the execution of Gleave's sentence, including the disputed fee payments required by the BOP and its contractor, the Buffalo Halfway House, can also be seen as authorized by 18 U.S.C. § 3622(c)(2) which specifically permits the BOP to

> release a prisoner from the place of his imprisonment for a limited period .... if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to—(c) work at paid employment in a training or educational program in the community while continuing in official detention at the penal or correctional facility if—.
>
> (2) the prisoner agrees to pay to the Bureau such costs incident to official detention as the Bureau finds appropriate and reasonable under all the circumstances, such costs to be collected by the Bureau and deposited in the Treasury to the credit of the appropriation available for such costs at the time such collections are made.

18 U.S.C. § 3622(c)(2).[7]

While 18 U.S.C. § 3622(c)(2) generally refers to employment in a training program, according to BOP Program Statement Number 7300.08, a fundamental expectation of the BOP is gainful employment of halfway house residents and "[t]he contractor shall develop

---

7. Significantly, Judge Skretny's sentence does not permit or contemplate that Gleave would or should be allowed to work outside of the Buffalo Halfway House.

*meaningful* resident employment opportunities. Meaningful employment means the matching of jobs to resident needs, aptitudes, desires, and capabilities." BOP Program Statement Number 7300.08, ¶ E(1) (emphasis in original). It follows that what qualifies as employment in a training program must be defined according to each halfway house resident's individual skills and education.

Additionally, in *United States v. Gonzalez,* 1993 WL 362410 (S.D.N.Y.1993), the court upheld BOP's requirement under § 3622(c)(2) that a federal convict who, like Gleave, worked in the community during his stay at a halfway house must contribute 25% of his salary from his work outside the halfway house to offset the cost of his confinement at the halfway house, the same requirement that Gleave challenges, finding that such requirement did not impose an additional fine on the convict, but instead was more appropriately considered a condition for allowing the convict to work while serving his sentence. *Gonzalez, supra,* at *1.

Regardless of whether Gleave was permitted to work in return for an agreement with the Buffalo Halfway House to pay toward his incarceration costs or whether he was simply directed to pay as part or condition of the execution of his sentence, as discussed, *Zakhor, Leonard, Orena, Turner* and *Carter, supra,* all upheld under a due process analysis the constitutionality of the imposition of a sentence under which the prisoner is required to contribute toward the costs of his confinement. As the broader authority to impose as part of the sentence of incarceration an obligation to repay such costs is constitutionally valid, it follows that the execution of Gleave's sentence including the disputed fee requirement, which can also rest upon the more specific statute, 18 U.S.C. § 3622(c)(2), is also constitutional. In either case, the increased "cost" to a defendant for his crime imposed on him in the form of such repayment for the reasonable expenses of his confinement rationally furthers the general deterrence goal of the criminal law and therefore comports with the Fifth Amendment due process clause. *See Turner, supra,* 998 F.2d at 536–37. To sustain Gleave's complaint on this branch of his claim would mean that it is irrational to demand that a prisoner share in the cost of his incarceration as a condition to being given the benefit of a less punitive (and presumably less costly) loss of personal liberty. Thus, as Defendants were authorized by the BOP's Program Statement Number 7300.08 to collect the challenged subsistence payments from Gleave and, under controlling Second Circuit precedent, such payments do not violate a prisoner's federal constitutional rights, the court finds that Gleave cannot establish a due process violation based on this ground.

**b.** ***Federal due process rights are not violated by the grant of authority to a private organization to incarcerate a federal prisoner and recover the costs of such incarceration by collecting a fee paid from the prisoner's wages and veterans' benefits***

Nor can there be any merit to Gleave's claim that his due process rights were violated by Defendants' actions in requiring the statutorily authorized payments from Gleave under the contract between the Halfway House and BOP. The Second Circuit has held that a subdelegation of executive authority by a federal agency to private parties is not invalid as a matter of federal due process provided such federal agency retains final reviewing authority. *See R.H. Johnson & Co. v. Securities and Exchange Commission,* 198 F.2d 690, 695 (2d Cir.) (Frank, J.), *cert. denied,* 344 U.S. 855, 73 S.Ct. 94, 97 L.Ed. 664 (1952). Here, the relevant allegation in the Complaint is that Defendants collected a fee—an administrative function—not that they acted beyond the authority of the contract with the BOP, or created rules, conditions of confinement or penalties not already imposed by the sentencing court or mandated by the BOP pursuant to applicable federal statutes and regulations including the BOP's Program Statements. Gleave's allegations, taken as true, indicate Defendants in collecting the required fee from Gleave, did only what the BOP could have done directly but elected, pursuant to law, to do by contract. There is, moreover, no allegation that the BOP does not retain ultimate authority for the lawful execution of Gleave's sentence or the

calculation of the fee to be collected.[8] As noted, the BOP's Program Statement Number 7300.08 specifically provides for such arrangements.

■ There is no serious basis for any challenge as a violation of due process that the BOP lacks authority to enter into the contract between the BOP and the Halfway House. Under 18 U.S.C. § 3621(b) (" § 3621(b)") the BOP may designate as a place of incarceration any penal or correctional facility that meets the BOP's minimum health and habitability standards "whether maintained by the Federal Government *or otherwise....*" (emphasis added). The term "otherwise" means "in a different way or manner." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (1986). There is nothing in the wording or the context of § 3621(b) to indicate that Congress intended to limit "or otherwise" to only governmental entities. Had Congress intended such a restriction it could easily have said so. *See Traynor v. Turnage,* 485 U.S. 535, 547, 108 S.Ct. 1372, 1381, 99 L.Ed.2d 618 (1988) (upholding Veterans Administration's interpretation of veterans' benefits statute that had Congress intended some other interpretation, it would have said so). Absent such limiting context or language, the court finds the use of the phrase "or otherwise" to be sufficiently broad to include designating through contracts, such as that alleged in the contract, places of incarceration operated by non-governmental entities like Defendants' halfway house.

■ The fact that the BOP, the agency responsible for implementing the statute, has entered into a contract with a private entity such as the Buffalo Halfway House as Gleave alleges demonstrates the BOP construes the statute in this way. Where an agency is charged with the administration of an ambiguous statute, that agency's interpretation of such statute is to be given deference and controlling weight by the courts provided the agency's interpretation is a reasonably permissible construction of the statute, and is not arbitrary, capricious, or manifestly contrary to the statute. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *1185 Avenue of the Americas Associates v. Resolution Trust Corp.,* 22 F.3d 494, 497 (2d Cir.1994). Further, an agency's interpretation of an ambiguous statute need not be articulated in a regulation but may be evidenced by the agency's conduct. *Bankamerica Corporation v. United States,* 462 U.S. 122, 131, 103 S.Ct. 2266, 2272, 76 L.Ed.2d 456 (1983) (recognizing that an agency's established practice indicates that agency's interpretation of the extent of power conveyed by statutory language). Here, use of the disjunctive phrase "or otherwise" in § 3621(b) does not appear ambiguous to the court, but, even assuming *arguendo* that it is, given the broad authority inherent in the "or otherwise" "alternative" as stated in § 3621(b), it cannot be said that the BOP's construction of the statute, through its actions in entering into a contract with the Halfway House, is arbitrary, capricious or contrary to law.

■ Moreover, 18 U.S.C. § 4042 which grants broad authority to the BOP to enable

---

8. The daily manday rate is a per diem rate that is paid by the Federal Bureau of Prisons to a Community Confinement Center for the cost of the care, including room and board, of each offender in the center's program. This rate is calculated by dividing the annual fee to cover the costs on incarceration (determined in accordance with the formula set forth in 28 C.F.R. § 0.96c(b)) by the number of days in the fiscal year. For fiscal year 1995, during which Gleave served his sentence at Buffalo Halfway House, this annual fee was calculated to be $21,352. 28 C.F.R. § 505.2(a)(1) (1995). Factoring in the number of days yielded a daily manday rate of $59.27 for fiscal year 1995. Here, the Complaint indicates that Defendants collected the subsistence payments from Gleave in accordance with the applicable regulations. Gleave reported to Buffalo Halfway House on or about May 20, 195, (Complaint, ¶ 7), and was released on August 11, 1995. (Complaint, ¶ 13). Gleave therefore was in residence at Buffalo Halfway House for approximately twelve weeks for which he was required to pay $1,380. (Complaint, ¶ 13). This amount factors out to a daily rate of approximately $16.43 that Gleave paid to Buffalo Halfway House during his period of incarceration there, well within the daily manday limit of $59.27. The amount Defendants collected clearly did not exceed either twenty-five percent of Gleave's total weekly income, or the daily manday rate.

it to carry out sentences involving incarceration of federal prisoners states that the BOP, under the direction of the Attorney General, shall—

> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2) provide suitable quarters, and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States....

18 U.S.C. § 4042(a)(1) and (2).

The BOP has construed this general authority to include the power to contract "for a period [not to exceed] three years, with proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care and proper employment of persons convicted of offenses against the United States." 28 C.F.R. § 0.96(v). This regulation is consistent with the BOP's interpretation of its general authority under § 3621(b). The reference in 28 C.F.R. § 0.96(v) to contracts with state and local governments, which is neither exclusive nor exhaustive, is properly interpreted as an authorization to engage such services from governmental bodies rather than a limitation on the authority of the BOP to contract with private entities for operation of a community corrections center.

■ Gleave's complaint also challenges Defendants' legal authority to include Gleave's veterans' benefits in Gleave's weekly income against which the 25% fee was applied, which Gleave was also then required to remit to Defendants for the subsistence payment. A federal sentencing court has broad authority to consider "the defendant's income, earning capacity, and financial resources" in imposing a sentence on a convicted defendant. 18 U.S.C. § 3572(a)(1). The court notes the absence of any qualifying statutory language as to what constitutes "income, earning capacity, and financial resources." Additionally, the statutes and regulations applicable to the required payments at issue here do not draw any distinction between earned income and veterans' disability benefits in making the calculation. 28

C.F.R. pt. 505. In the absence of any such qualification or distinction, this court finds that none was intended. Moreover, as discussed, the BOP's Program Statement Number 7310.03 specifically requires residents in a community corrections center to remit 25% of their gross income to the community corrections center. Further, for any resident of a community corrections center who does not receive income from wages, such resident is nevertheless required to make subsistence payments equal to approximately 25% of his weekly income from any other source of income, such as Social Security, veterans' benefits, or Workmen's Compensation. Program Statement Number 7310.03, at p. 24 (discussed *supra* at p. 606). Thus, each resident of a halfway house is required to remit 25% of his gross weekly income, regardless of the source of such income, as a subsistence payment to the halfway house to help defray the costs of his incarceration. There is no indication in the Program Statement that veterans' benefits were to be excluded from the calculation of a halfway house inmate's required subsistence payment. It follows that Gleave's veterans' benefits as an element of Gleave's gross income were properly subjected to the required fee calculation, and the BOP through its contract with Defendants could require fee payments be calculated on that basis.

■ Additionally, the only statutory provision which directly addresses the question of whether veterans' benefits may be subjected to judicial process does not exempt veterans' benefits from the fees at issue. Specifically, 38 U.S.C. § 5301, provides that such benefits

> "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws...."

38 U.S.C. § 5301(a).[9]

Significantly, § 5301(a) does not address the question of whether such payments may be

---

9. Two Court of Claims cases have held that veterans' benefits were not subject to setoff against a

considered by the court in determining whether a convicted defendant in a federal criminal proceeding has the financial ability to pay a fine under 18 U.S.C. § 3572. Rather, the court finds that applying the accepted maxim of statutory construction, *inclusio un- ius est exclusio alterius*, to 38 U.S.C. § 5301(a), the inclusion of Gleave's veterans' benefits in calculating Gleave's total income was not an "attachment, levy or seizure by or under any legal or equitable process" of such benefits and, therefore, is not prohibited by that statute. Even if the disputed fee assessments were considered to be a form of "legal process," the statute by its terms would authorize such enforcement here, as the required fees must be considered to be a claim of the government and, thus, exempt from the protective purposes of the statute. Additionally, the court's research revealed no caselaw indicating that veterans' benefits are to be excluded from such calculation of gross income. For these reasons, § 5301(a) presents no barrier to enforcement of the BOP's reimbursement fee against Gleave's total income, including his veterans' benefits.

Therefore, the delegation through contract of the BOP's authority to operate a community corrections center such as the Halfway House and to collect the mandated fee from Gleave was lawful and constitutional, and Defendants' exercise of their contract authority to collect the disputed fee pursuant to the contract with the BOP cannot constitute an action which denies Gleave of federal due process.

### 4. *Gleave's First Amendment Claim*

As noted, Gleave also asserted a due process violation arising from Defendants' alleged threat that if Gleave failed to pay the fee he would be incarcerated in a prison. However, the court, under the required generous reading of the Complaint finds that these allegations are more properly cognizable, if at all, under the First Amendment.

In *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988) the court held that a retaliation against a prisoner's exercise of a substantive constitutional right—in *Franco*, plaintiff's complaints and cooperation with an external investigation as to allegations of abuse of inmates—would support a civil rights claim under the First Amendment as the right to communicate with investigators is a form of protected speech. *Franco, supra*, at 586. In this case, however, the underlying conduct upon which Gleave's objection is based is not constitutionally protected speech or conduct, nor, based on the Complaint's allegations, even assuming *arguendo* Gleave's objections to the fee are protected, was Gleave's speech restricted.

Gleave, as a convicted federal prisoner subject to a lawful sentence including payment of the subsistence fees, had no right to refuse payment, and Defendants' alleged statement, characterized as a "threat" to Gleave of the probable consequence of such refusal was not alleged to be an attempt by Defendants to stop Gleave from complaining about the terms or manner of execution of his sentence. Rather, based on the allegations, Defendants were simply informing Gleave of the likely consequences should Gleave actually refuse to make the payments. Such a refusal would have constituted conduct in which Gleave had no constitutional right to engage, and the BOP had explicit legal authority to direct Gleave's transfer to another facility if Gleave failed to make such

federal criminal fine imposed against the veteran, *McElhany v. United States*, 101 Ct.Cl. 286, 1944 WL 3744 (1944); and *Hermann v. United States*, 113 Ct.Cl. 54, 81 F.Supp. 830 (1949). However, in both those cases, the Veteran's Administration withheld a portion of the veteran's monthly benefits and applied the same to the payment of a court imposed fine. The courts held that under the predecessor to § 5301(a), the Administrator of Veterans' Affairs was without authority to effect such withholdings because the Administrator as, trustee of the funds, was merely the "paymaster" of the funds appropriated for disbursement as veterans' benefits. The instant case is distinguished as here no amount is being withheld from Gleave's veterans' benefits check, yet Gleave challenges whether the amount of Gleave's monthly veterans' benefits was properly included in calculating 25% of Gleave's weekly income, which Gleave was then required to pay to the Halfway House as the mandatory subsistence payment. Furthermore, and, as discussed at p. 609, n. 8, *supra*, the money collected from him as payment of such fee did not exceed the limit set in accordance with 28 C.F.R. §§ 0.96c(b) and 505.2(a)(1), and Gleave makes no such claim.

payments. Under 18 U.S.C. § 3621, among the reasons for which the BOP is authorized to direct the transfer of a prisoner are the history and characteristics of the prisoner. 18 U.S.C. § 3621(b)(3). There is little room to dispute that had Gleave actually refused to make the subsistence payment, the BOP would have been justified in directing Gleave's transfer to another facility based on Gleave's defiant nature. BOP Program Statement Number 7300.08, ¶ D.

Moreover, if Gleave in fact had refused to pay the fee, he would have been in violation of a condition of his sentence which directed that Gleave be incarcerated in a halfway house, under the BOP's jurisdiction. Implicit in the incarceration of a prisoner in a halfway house is that the prisoner will abide by the terms of the halfway house and one of the express terms of such incarceration is that halfway house residents contribute to the costs of their incarceration through subsistence payments. BOP Program Statement Number 7300.08, ¶ D, and discussion, *supra*, at p. 606. Further, "[f]ailure to pay subsistence payments may result in disciplinary action, including termination from the program." BOP Program Statement Number 7300.08, ¶ D. Additionally, according to the BOP's Program Statement Number 7300.08, the refusal to pay a specified subsistence payment is considered a violation of a condition of a community corrections center and is sanctionable by disciplinary action, including change of quarters, removal from the program, and disciplinary transfer. Program Statement Number 7300.08, ¶ D, and Attachment 5–9a, p. 6.

Further, it is settled that a convicted prisoner has no liberty interest protected by due process in his place of incarceration even though the degree of confinement in one facility may be substantially different that in another. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Defendants' alleged "threats" as to the likelihood of Gleave's transfer to a higher security prison for refusal to pay the required fee therefore cannot be viewed as unlawful infringement of any federal due process rights which could conceivably protect his

objection to the carrying out of his sentence as a prisoner. It is established that a prisoner does not have an unrestricted right to express opposition to execution of his sentence to prison officials. *See Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) ("a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"). Thus, even if it is true that Defendants threatened Gleave with incarceration in a more restrictive facility for objecting to the fee, no First Amendment right of Gleave's was thereby violated. Further, assuming *arguendo*, such protection exists, Gleave was neither prevented from voicing his objection nor sanctioned as a result. The Complaint itself states that Gleave was able to make known his objection and that he paid the fees under protest.

Finally, it has been held that threats in the form of verbal abuse and name calling do not implicate any federal constitutional rights and therefore "usually are not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993); *See Martin v. Sargent*, 780 F.2d 1334, 1338, 1339 (8th Cir. 1985). *Cf. Burton v. Livingston*, 791 F.2d 97, 99, 100–101 (8th Cir.1986) (threatening words of prison guard, without more, do not invade a federally protected right, unless a guard "terrorized ... [prisoner] with threats of death"). If threats, verbal abuse and name calling alone are insufficient to support a civil rights claim under § 1983, it follows that, in an analogous *Bivens* action, a more benign form of conduct by a prison official such as a mere statement as to the likely legal consequences of not making the required subsistence payments, particularly where such statement is in accordance with the applicable law, for similar reasons can not be recognized as an actionable constitutional violation.

Thus, the Complaint only alleges a claim for which, under any set of facts which Gleave could prove, no relief under federal law is available, and Defendants' motion is GRANTED on this ground.

### 5. *Failure to Join an Indispensable Party*

Finally, Defendants contend dismissal is warranted pursuant to Fed.R.Civ.P. 12(b)(7) and 19 because Gleave failed to join the Federal Bureau of Prisons as a party. Under Rule 19, joinder of a party in an action is required if, in the absence of such party, complete relief cannot be accorded among those parties already joined. Fed. R.Civ.P. 19(a)(1). Here, Defendants maintain that Gleave was required to join the BOP, which mandated the disputed subsistence payments.

Merely alleging a violation of regulations is not sufficient to require joinder of the agency that issued the regulations as a party, however, if the constitutionality of such regulations is challenged, then the regulation issuing agency must be joined. *Edgecomb v. Housing Authority of Town of Vernon*, 824 F.Supp. 312, 314 (D.Conn.1993) (plaintiffs were not required to join the Department of Housing and Urban Development as a party for just adjudication of an action in which plaintiffs alleged defendants violated the department's regulations, but did not specifically challenge the constitutionality of such allegedly violated regulations).

In this case, Gleave has not specifically challenged the constitutionality of the regulations pursuant to which Defendants collected the subsistence payments. Rather, Gleave has challenged Defendants' authority to collect such payments, based on the fact that "[Gleave] has not been able to find any policy statement issued by the Attorney General that relates to the payment of these fees." Complaint, ¶ 15. As Gleave has not directly questioned the constitutionality of the regulations, joinder of the BOP as an indispensable party was not required, and, thus, Gleave's complaint may not be dismissed under Fed. R.Civ.P. 12(b)(7). Further, as the court has found the mandated fees and their collection by Defendants to be within the requirements of due process as a basis to grant Defendants' motion to dismiss under Fed.R.Civ.P. 12(c), there is no need to determine the merits of the motion under Rule 12(b)(7).

### 6. *Award of Attorney Fees*

In their answer Defendants demanded that they be awarded costs incurred in this action, including reasonable attorney's fees. Under 42 U.S.C. § 1988, the court has discretion to direct such an award to the prevailing party in any §§ 1983 or 1985 action or proceeding, although there is no analogous law sanctioning such an award for the prevailing party in a *Bivens* action. *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). It is within the inherent power of the district courts to award attorney fees to the prevailing party in a civil rights action where it is determined that the losing party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....' " *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980), *quoting F.D. Rich v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). The standard applied in determining whether to award attorney's fees to a prevailing defendant under a fee-shifting provision was established by *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), where the Court held that attorney's fees may not be awarded to the prevailing defendant in a Title VII case absent a showing that the plaintiff's claim is "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after [the claim] clearly became so." *Christiansburg, supra*, at 422, 98 S.Ct. at 701. This standard for fee awards to prevailing defendants has been applied to civil rights cases. *American Federation of State, County and Municipal Employees v. County of Nassau*, 96 F.3d 644, 650 (2d Cir.1996). That a defendant ultimately prevails on a claim, however, is insufficient to justify an award of attorney's fees. *American Federation, supra*, 96 F.3d at 650. After reviewing the law applicable to this case, the court is persuaded that Gleave's claim was not frivolous, unreasonable, or without foundation, and does not support an award of attorney's fees to Defendants. Gleave's allegations required a careful review of the applicable statutory and regulatory provisions for collection of the disputed fee to

determine, conclusively, that they were without merit. Although caselaw has upheld the legality of the prisoner fee payments at issue, the specific and novel issue raised by Gleave, as to the authority of private operators of halfway houses under contract with the BOP to enforce such fees as in this case, has not been previously addressed by courts.

### CONCLUSION

Based on the foregoing, Defendants' motion for judgment on the pleadings is GRANTED; Defendants' motion for costs and attorney's fees is DENIED.

SO ORDERED.